WILLIAM A. MCGILLIS

*v.*

JAMES HOGAN *et al.*

*Opinion filed April 18, 1901.*

</div>

1. PLEADING—*when cross-bill features of answer are regarded as abandoned.* Coss-bill features of an answer are to be regarded as abandoned by the defendant where the answer does not purport to make any one defendant thereto nor ask that any one shall be required to answer its allegations, and where no answers are filed thereto but replications are filed, upon which the defendant voluntarily goes to a full and final hearing of the cause on the issues made by the bill, answer and replication without taking any steps to have the answer treated as a cross-bill.

2. ACCOUNTING—*court may hear preliminary proof as to whether an accounting is necessary.* Even if the pleadings make a case for an accounting by a trustee, it is proper for the court to first hear preliminary proof and determine whether an accounting ought to be had and upon what basis.

3. TRUSTS—*when trustee is entitled to compensation for legal services.* One who, as attorney for a firm involved in litigation, devises a plan whereby he is made trustee of their respective interests under a contract authorizing him to conduct certain intended litigation, is entitled to reasonable compensation for his legal services where he successfully conducts the litigation with the assent of the partners, and the contract provides that he shall pay and "deduct" the reasonable costs, fees and expenses of the litigation from the proceeds of the suit.

4. SAME—*when trustee should re-pay money advanced to pay expense of litigation.* Where the trustee for a firm involved in litigation is required by the trust agreement to first pay the reasonable costs, fees and expenses of the litigation, it is his duty, under such clause,

to re-pay money advanced for the expense of such litigation by a third party, to whom one of the firm had assigned his interest in the suit, and who advanced the money at the request of the trustee, under his promise to re-pay the money so advanced, with interest thereon.

*McGillis* v. *Hogan*, 85 Ill. App. 194, affirmed.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on writ of error to the Circuit Court of Kankakee county; the Hon. JOHN SMALL, Judge, presiding.

PADDOCK & COOPER, for plaintiff in error.

ALDEN, LATHAM & YOUNG, for defendant in error Eames.

H. K. WHEELER, for defendant in error Cooper.

Mr. CHIEF JUSTICE BOGGS delivered the opinion of the court:

Plaintiff in error, McGillis, who lived in Kankakee, Illinois, and defendant in error James E. Hogan, in 1882 became partners under the name of McGillis & Co. The firm entered into a written contract with the Western Air Line Construction Company, by which said McGillis & Co. contracted to grade and complete forty-six miles of the road-bed of the Indiana, Illinois and Iowa railroad at prices stipulated in the contract. The contract provided the measurements and estimates of the engineers of the construction company should be conclusive on the contracting parties. McGillis & Co. performed a portion of the work and refused to proceed further in the performance of their contract, on the ground (as they alleged) the engineer of the construction company had fraudulently made too low an estimate upon the work they had done, and that by reason of such fraud the amount due them was estimated by the engineer at a

190—12

sum $55,000 less than they were entitled to receive. The construction company, acting under a clause in the contract authorizing that course to be taken in the event McGillis & Co. should make default, completed the work at an expense, as the construction company claimed, of $22,000 in excess of the amount it would have had to pay for the work under the contract with McGillis & Co. About this time the defendant in error Hogan, a member of the firm of McGillis & Co., squandered a considerable sum of money of the firm in gambling houses in Chicago. The defendant in error Cooper, an attorney at law in Chicago, was employed by the firm to recover, and did so recover, a considerable portion of the money so lost by Hogan. McGillis & Co. were indebted to various parties for labor performed and material furnished in and about the work performed by them under the contract with the construction company. The construction company was a non-resident corporation and had no tangible property in this State. An agreement was made between the firm and Cooper, their attorney, by which McGillis, the first party, and Hogan, the second party, executed an instrument assigning to Cooper, the third party, as trustee, all their rights under said contract. Cooper accepted the trust in writing. The instrument gave Cooper full control of the controversy between McGillis & Co. and the construction company, authorized him to sue upon their claim, to settle and compromise all said matters and to bind McGillis & Co. in relation thereto. The instrument imposed upon Cooper the following directions as to the disposition of the funds when collected:

"*First*—Out of any moneys or funds derived from a settlement or a decree or judgment relating to the matters in controversy,—that is to say, out of any moneys or funds derived for work done or materials furnished or damages incurred by said first and second parties on the line of the Indiana, Illinois and Iowa railroad,—the said Cooper, as such trustee, shall pay and deduct the rea-

sonable costs, fees and expenses of such settlement or litigation.

"*Second*—He shall next pay the amount due by said first and second parties for work done or materials furnished on the line of said railroad by other persons, as the same is shown upon the books and papers of said firm, composed of said first and second parties hereinbefore referred to.

"*Third*—He shall divide the remainder of such money or funds so derived between the said first and second parties hereto, in accordance with the interest that each has in said co-partnership, the same being an equal interest, but the partnership accounts between said first and second parties not having yet been settled."

Thereafter, Cooper brought an attachment suit in the circuit court of Kankakee county against the construction company upon said claim. Defendant procured the removal of the cause to the United States Circuit Court. A trial was had in Chicago before Judge Bunn and a jury, occupying some ten days, and resulted in a verdict for plaintiffs for about $17,000. A motion for a new trial was made by the defendant, and argued at Madison, Wisconsin, and granted upon defendant paying the costs and $500 to plaintiffs. A second trial of about eight days' length was had before Judge Gresham and a jury, and plaintiffs had a verdict for $24,165.57. A motion for a new trial was argued and denied, and judgment rendered. A writ of error to the Supreme Court of the United States was sued out and made a *supersedeas.* Upon application to that court the *supersedeas* was set aside but the writ of error was retained. John Allison & Co., creditors of McGillis & Co., sued the latter and got judgment. That matter was then adjusted, by consent of McGillis & Co., by the assignment to Allison & Co. of $8800 of said judgment against the construction company. Thereafter, Cooper settled with the construction company for $20,000 in cash, he first agreeing that the fees of himself and his

assistant, Gen. Stiles, should be scaled down seventeen per cent, and also procuring Allison & Co. to accept $7900 in full of their judgment.

In all this litigation Cooper acted as the main attorney for McGillis & Co., assisted at the trial by Gen. Stiles and some younger lawyers. The litigation was expensive for plaintiffs. It was a matter of great difficulty to prove their case. The grading had been done on an old road-bed constructed eleven years before McGillis & Co. began work. After McGillis & Co. quit, the construction company at once went on and finished the work. The construction company's engineer, in making estimates for McGillis & Co., had assumed that the original road-bed was a complete and perfect structure of a certain height and length. McGillis & Co. claimed it was washed out and destroyed in many places, which they had filled and for which they should be paid. It was a matter of much difficulty and expense, and required the aid of experienced engineers, to ascertain and prove how much McGillis & Co. had done upon this road-bed, finished, as it was, before the first trial and containing the work of three different sets of contractors, and especially to overcome the estimates made while McGillis & Co. were at work, by the engineers of the construction company, whose decisions were by the contract made final. Money was therefore called for by Cooper frequently, and in large sums. When Hogan went into the firm he borrowed considerable sums of money of defendant in error Eames, of Ashland, Massachusetts, which Hogan claims he put into the firm business. When Hogan was called upon to advance funds for the prosecution of the suit against the construction company he was unable to do so. He thereupon assigned his interest in the contract and suit to Eames, and the latter advanced money, mainly for the first trial. He paid $700 directly to Cooper, and paid $410 at the request of Cooper to procure the attendance of Hogan and his brother, who were unable or unwill-

ing to come to the trial unless their expenses were paid. He thus advanced $2110. McGillis advanced over $4000, mostly for the expenses of the second trial. McGillis also paid claims against McGillis & Co. for labor and material to the amount of $2696.35, prior to the settlement with the construction company.

After Cooper received the $20,000 he distributed it on December 10, 1888. At that time he paid the remaining expenses of the suit, except certain amounts aggregating $592, which he overlooked and has since paid out of his own moneys; paid Allison & Co. $7900 in full of their judgment against McGillis & Co.; paid Gen. Stiles the balance due him for his services at the trials; deducted the balance he claimed to be due himself for his legal services, and paid McGillis $6696.35, which left of the $20,000 only $7.65, and that sum Cooper retained. He took at that time from McGillis a paper, signed by McGillis, the body of which was as follows:

"Received of John S. Cooper, trustee, the sum of $2696.35, money paid out by me in payment of the indebtedness of McGillis & Co., incurred in work of construction of Ind., Ills. & Iowa R. R., under a contract with the Western Air Line Construction Company. Also received at the same time from John S. Cooper, trustee, the sum of $4000, with which to pay the remaining debts of said McGillis & Co., which I agree to devote to such purposes, rendering an account to said Cooper of my actings and doings whenever so requested."

The proof shows that McGillis thereafter expended more than $4000 in payment of the remaining debts of McGillis & Co. The firm of McGillis & Co. was organized to take this contract from the construction company, and the firm never did any other business.

After Eames had advanced the $2110 he made an assignment under the insolvent laws of Massachusetts, and thereafter purchased from his assignee all interest in the claim of McGillis & Co. against the construction company, and then began to make demands upon Cooper for payment both of the $2110 so advanced and also of the

moneys he had originally loaned Hogan. Cooper then began this suit on September 9, 1895, to enjoin Eames from suing him, to compel McGillis to account for the $4000 paid him December 10, 1888, to compel McGillis and Eames to settle between themselves the matter of Eames' advances, and to have the trust declared closed. In the final decree the court below discharged Cooper, declared the trust closed, and gave Eames, on a cross-bill filed by him, a personal decree against both McGillis and Hogan for $3131.10, being said $2110 advanced by Eames, with interest thereon from December 10, 1888, the date when McGillis received the $4000.

Appeals to the Appellate Court were granted to Mc-Gillis, Hogan and Eames, but neither of them perfected such appeal. McGillis sued out a writ of error from the Appellate Court for the Second District, and upon a hearing in that court a judgment was entered reversing and remanding the case, with directions to the trial court to enter a decree in favor of Eames, against McGillis and Cooper, for the sum of $2110 advanced by Eames to Cooper, as trustee, as aforesaid, with interest at six per cent from the date the several sums composing the said sum of $2110 were paid by Eames to Cooper, and awarding to Cooper a supplemental decree against McGillis and Hogan for the re-payment to him of any sum he might be required to pay to Eames under the decree. This is a writ of error sued out by McGillis to bring the judgment of the Appellate Court in review in this court. Defendant in error Cooper has, by a cross-error, challenged the correctness of the judgment of the Appellate Court directing the circuit court to render a decree against him, jointly with plaintiff in error McGillis, in favor of Eames. Hogan did not assign cross-errors in the Appellate Court nor does he do so in this court.

We do not think the decree should be reversed because the court did not cause an account to be had and stated by the master. Defendant in error Cooper, complainant

below, did not pray for an accounting in the original bill, and he and the defendant in error Eames in this court, as they did in the Appellate Court, argue the issues did not involve the examination of intricate and complex accounts, and that a statement of the accounts by the master was not required by the rules of chancery practice. There is, therefore, no error committed against them.

Without considering further the correctness of the contention of the plaintiff in error McGillis that his answer to the original bill filed by the defendant in error Cooper was so drawn as to constitute at once an answer and a cross-bill, and that in it he asked an accounting, it is sufficient to say that as the answer did not purport to make any one defendant thereto; did not ask that any one should be required to make answer to its allegations; that no one did file answer thereto but that replications were filed to it, and that McGillis voluntarily went to a full and final hearing of the cause on the issues made by the bill, answers and replication without taking any steps to have the answer treated as a cross-bill, the features of a cross-bill found in the answer are to be regarded as having been abandoned by him. *Hungate* v. *Reynolds*, 72 Ill. 425; *Purdy* v. *Henslee*, 97 id. 389.

Nor can the contention prevail that the accounts to be investigated here are so complicated that this court should, of its own motion, refuse to consider them except upon a statement drawn by a master. Upon this point we adopt the reasoning of the opinion of Mr. Justice DIBELL, of the Appellate Court, in this cause:

"Even if the pleadings had made a case for an accounting by the trustee, it would have been proper for the court to hear preliminary proofs first, to determine whether an accounting ought to be had and upon what basis. The court did hear proof from which it was justified in finding that in November, 1886, Eames and McGillis, at Cooper's office in Chicago, went over his accounts thoroughly, and discussed and were satisfied with each

item thereof, and then gave him their joint note for $1000 upon the deficiency. True, Eames and McGillis deny such an examination of the accounts; but when the reasonable probabilities are added to the testimony of Cooper and Clark, and to the memoranda then made by Clark, the court below was warranted in believing there was then a settlement. On December 10, 1888, it is clear McGillis was fully advised how the moneys had been and were being applied, and he acquiesced therein and was a party thereto. The transactions of that date constituted a settlement as between Cooper and McGillis, and were binding upon McGillis. The only matter not then closed, as between McGillis and Cooper, was the disposition to be made of the $6696.35 paid by Cooper to McGillis that day. Therefore the preliminary proofs warranted the court in not going into any question of accounting by the trustee or between the partners and Eames. No accounting was necessary to ascertain what Eames advanced for the expenses of the suit, for there were but six items, and their amounts and dates, when advanced, were not disputed. McGillis' testimony, showing to whom he paid remaining debts of McGillis & Co., amounting to more than $4000, is also undisputed. No reference to state an account was therefore required."

The contention of the plaintiff in error the decree allowing the trustee, the defendant in error Cooper, fees for his services, rendered in his professional capacity as an attorney, in the collection of the demands against the construction company, is in violation of the rule which prevails in this State with reference to the denial of compensation to a trustee, and the further contention that the amount so allowed is unreasonable, is well treated in the opinion of the Appellate Court, and what was there said is here adopted as a part of the opinion of this court:

"It is argued, first, that he could have no compensation as trustee under the trust instrument; second, that he made a verbal contract to do the work for $2500, or

ten per cent of the sum collected; and third, that his
charges were excessive. Cooper was the attorney of
McGillis & Co. before this contract. It was as their
attorney he devised this arrangement. Not only did he
perform the main labor of preparing and trying the case,
but it is obvious the parties so intended when the con-
tract was made. If he was only to pay others, the word
'deduct,' in the first clause of the contract above quoted,
relative to the application of the proceeds of the suit,
was inapplicable. It said: 'The said Cooper shall de-
duct the reasonable fees of such settlement or litigation.'
Construing the contract by the situation of the parties
and by their subsequent acts, we think they meant by
these words that Cooper should take out of the fund rea-
sonable compensation for his legal services. McGillis
and Hogan testify he told them his charges would be
$2500, or ten per cent. This negatives the present claim
that he was to serve for nothing. Cooper denies that con-
versation. If it occurred at all, it was before the trust
instrument was drawn, and was therefore superseded
by its provision for reasonable fees. Cooper's charges
appear very heavy. But the litigation was important.
The labor of making a case for plaintiffs was great. The
trials were in the United States Circuit Court at Chicago,
with services at Madison, Wisconsin, and at Washington.
Able lawyers were on the other side. The litigation con-
tinued six years. The result was an evident success,
where defeat and a large liability upon the bond given
by McGillis & Co. with its contract were entirely pos-
sible. Cooper introduced proof that his charges were
reasonable for the services performed. There was no evi-
dence to the contrary. The parties never questioned the
sums charged by him for his services while they were be-
ing rendered, nor for seven years thereafter, and evidently
McGillis would not have done so then had not Eames
pressed his claim for reimbursement of his advances. We
think the present record would not justify us in reducing

Cooper's charges or directing him to now account concerning them before a master."

We think the chancellor correctly refused to enter a decree against McGillis and Cooper in favor of the defendant in error Eames for certain sums of money which Eames loaned to Hogan. Our conclusion from the testimony on this point is, that said sums of money were not loaned to Hogan as a member of the firm of McGillis & Co., or for partnership purposes, but were furnished by Eames to Hogan as an individual, in order to supply him with funds necessary to enable Hogan to contribute to the firm his share of the original capital of the co-partnership. As the assets are not sufficient to pay the firm indebtedness and there is no surplus remaining for the partners, it is manifest Eames should not have had a decree against Cooper for moneys loaned to Hogan as an individual.

We think the decree should go against Cooper and McGillis in favor of Eames for the different amounts advanced by Eames to Cooper, as trustee, to be used by the latter in defraying the expenses of the suit, and that such judgment should include interest at the rate of six per cent per annum from the date of the payments, respectively, to said Cooper. The remarks of the Appellate Court in disposing of this branch of the case meet our approval, and are as follows:

"The first direction of the trust instrument as to the distribution of the fund was, that he should pay the costs, fees and expenses of such litigation. The moneys advanced by Eames and McGillis to defray those expenses were, in our judgment, as much payable under that clause as they would have been if Cooper had advanced his own money or borrowed funds at the bank to defray the expenses of the suit. It was a matter of indifference to McGillis whether the money he advanced for expenses was refunded to him or the same amount applied in liquidation of the debts of the firm, as he was

liable for said debts, and it is not important whether
McGillis is correct in testifying the receipt he gave does
not truly state for what the money was paid him. But
Eames was not liable for the debts of McGillis & Co., and
therefore it was important to him that the $2110 he ad-
vanced should be re-paid to him in the order provided in
said trust instrument and out of said trust funds. He had
rights under said instrument by virtue of the assignment
from Hogan to himself after the trust instrument was
executed. He had a right to make advances to protect
the interests Hogan had assigned to him. The proof
shows Eames advanced these moneys from time to time
upon Cooper's repeated written promises to re-pay them
out of the first moneys he should receive as the fruits of
the litigation, with interest at six per cent. One of these
promises was as follows: 'All moneys advanced by you
shall be paid first out of the moneys collected, with six
per cent interest from the date of advancement to the
date of payment.' In another letter Cooper wrote Eames
for a statement 'of all moneys you have advanced to me
since I received the assignment of the claim and the dates
of such advances, as they will bear interest at six per
cent from the time the advance was made, as I promised
you.' There are other like letters, and the proof also
shows an oral agreement to the same effect. Cooper
had to raise money for necessary expenses of the liti-
gation, and we are satisfied he had authority to bind
the firm and fund for its re-payment, with interest. It
was Cooper's duty to re-pay Eames. He recognized this
duty in his testimony, but excused his turning the en-
tire balance of the fund over to McGillis without pay-
ing Eames, as he had agreed, by testifying McGillis had
agreed to do it for him out of said funds. But his testi-
mony as to what McGillis said shows he wronged Eames
in trusting McGillis to pay Eames. He testified McGillis
said he was satisfied Eames was a partner of Hogan, and
that Hogan had gambled away the last payment made

by the construction company, and that Eames and Hogan owed him money and he wanted to settle with Eames. If McGillis said that, it should have showed Cooper he did not intend to pay Eames, and Cooper should have himself carried out the first provision of the trust instrument and performed his own promises. McGillis denies this conversation, but admits in his testimony (not sufficiently abstracted) that about the time of the settlement he and Cooper had a long conversation about Eames, and admits that before the settlement he was fully acquainted with the fact Eames had made these advances upon promises by Cooper of re-payment out of the judgment that should be obtained. McGillis therefore received the $6696.35 with knowledge that Eames was entitled to have his advances re-paid out of that fund, both under the first provision of the trust instrument and under the promises made Eames by Cooper in harmony therewith. He therefore took the fund charged with that trust in favor of Eames, and the statute of limitations is not a defense. If there was not enough of the fund to re-pay all advances for expenses made by both Eames and McGillis, Eames should have been paid first, for he was not liable for the firm debts or for the costs of the litigation, while McGillis was liable for both. The decree in favor of Eames against McGillis was therefore right, except that it should have further given Eames interest at six per cent per annum on the several sums advanced, from the dates of their advancement to the date of the decree. The decree should also be against Cooper for the same amount, with execution against both. * * * The decree should provide that if Cooper is compelled to pay anything thereunder to Eames, he shall be entitled to a supplementary decree against McGillis and Hogan for the re-payment thereof, with execution."

We think the judgment of the Appellate Court is correct, and it is affirmed.        *Judgment affirmed.*